

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

AXB:JRS
F. #2020R00569

*610 Federal Plaza*
*Central Islip, New York 11722*

June 2, 2023

By ECF and E-Mail

The Honorable Gary R. Brown
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

Re: United States v. Rickey Lynch
Criminal Docket No. 21-405 (S-1) (GRB)

Dear Judge Brown:

In accordance with Rule IV(a) of the Court's Individual Practice Rules, and in advance of the trial scheduled for July 10, 2023 in the above-referenced matter, the government respectfully moves in limine:

(i) pursuant to Federal Rules of Evidence 609(a) and 404(b), to admit evidence of the defendant Rickey Lynch's prior New York State conviction for identity theft and related conduct, which is substantially similar to certain of the charges in this case and establishes Lynch's knowledge and intent (which Lynch has already placed in issue in this case) among other legally permissible purposes;

(ii) to preclude Lynch from raising a defense at trial based on the so-called Renovation, Repair and Painting Rule, which this Court has already determined to be inapplicable, for which there is no legally sufficient evidence warranting an instruction to the jury, and which could only serve to confuse and mislead the jury; and

(iii) to preclude the defendant from arguing, commenting upon, or otherwise introducing at trial the fact that this is a case of first impression, which is not relevant to any question that the jury will be asked to consider and which could only serve to confuse, mislead, and/or nullify the jury.

For the reasons set forth below, each aspect of the government's motion should be granted in its entirety.

I. Background

The government assumes the Court's familiarity with the factual basis for this prosecution, which was recited in detail in the government's August 26, 2022 opposition ("Govt. Opp.") to Lynch's omnibus pretrial motion (the "Prior Motion" or "Def. Mot."). (ECF:24.) Nevertheless, for the Court's reference, a copy of the government's submission is attached hereto as Exhibit A and incorporated by reference herein.

Moreover, on January 24, 2023—following the Court's resolution of the Prior Motion—a grand jury returned a superseding indictment ("S-1"). (ECF:30.) As outlined by the government at Lynch's arraignment on January 31, 2023 (ECF:32), the superseding indictment added the following charges and factual allegations:

To obtain certification by the Environmental Protection Agency ("EPA") to operate as a lead-based paint abatement firm, Lynch's company, Bright Lights Supreme Cleaning, Inc. ("Bright Lights"), was required to attest in writing that the company would only employ appropriately certified employees to conduct lead-based paint activities and would otherwise follow the work practice standards set forth in the implementing regulations to the Toxic Substances Control Act of 1976 ("TSCA"). (S-1 ¶ 3.) On or about September 5, 2018, on behalf of Bright Lights, Lynch made such an attestation, upon which the EPA relied to award the firm a certification on or about September 12, 2018. (S-1 ¶ 8.)

Whereas the original indictment alleged only that Lynch failed to obtain EPA certification to supervise lead-based paint activities, including abatement, the superseding indictment clarified that Lynch also did not seek or obtain certification to perform such work. (S-1 ¶ 9.) In fact, the superseding indictment clarified that, at the time Lynch performed the abatement at the Freeport Residence, not only was he uncertified to supervise the project but he was also uncertified to perform any of the work himself, or to perform any related preparation, cleanup, disposal and post-abatement clearance testing activities. (S-1 ¶¶ 1, 14.)

In addition to the Freeport Residence, the superseding indictment alleged that Lynch violated the TSCA and its implementing regulations in connection with a second lead-based paint abatement project at a facility identified as the Roslyn Childcare Center.[1] (S-1 ¶¶ 16-18.) It further alleged that, as with the Freeport Residence, Lynch made false statements and misappropriated the identity of David Cantero in response to an EPA investigation into his

[1] The superseding indictment alleged that Lynch's work on that jobsite—which was, in fact, a church-run daycare—was legally insufficient for many of the same reasons as the work he performed at the Freeport Residence which formed the basis for the initial indictment: (1) he performed the work without providing advance notice to the EPA; (2) he did the work himself despite lacking certification to do so; (3) he did not pre-arrange for a qualified individual to prepare an occupant protection plan describing the measures he would take to keep the facility's occupants safe; and (4) he did not arrange for any EPA-certified supervisor to be present for worksite preparation and cleanup and available less than two hours away for the duration of the work. (S-1 ¶ 18.)

conduct.[2] (S-1 ¶¶ 24-25.) For this conduct, the superseding indictment included three new charges: (i) violations of the TSCA at the Roslyn Childcare Center (Count Two); (ii) false statements to the EPA relating to the Roslyn Childcare Center (Count Seven); and (ii) aggravated identity theft (Count Nine). These charges mirrored substantially similar charges contained in the original indictment related to Lynch's abatement work at the Freeport Residence, which survived the Prior Motion's request for dismissal.

Finally, the superseding indictment contained factual allegations related to multiple conspiracies between Lynch and an individual identified as "Co-Conspirator-1." Specifically, the superseding indictment alleged that Lynch agreed with Co-Conspirator-1—the proprietor of a Medford-based abatement firm and a relative of Cantero—to conceal Lynch's failure to comply with the regulations governing the proper abatement of lead-based paint at the Freeport Residence and Roslyn Childcare Center, and to obstruct the EPA's investigation of Lynch's conduct. (S-1 ¶ 20.) In furtherance of the conspiracies, it is alleged that Co-Conspirator-1 provided Lynch with a certificate purportedly issued by Ando International, an accredited certification provider, certifying that Cantero completed lead supervisor training from August 19, 2019, to August 22, 2019, and thereby became an EPA-certified lead supervisor.[3] For this conduct, the superseding indictment included three new charges: (i) conspiracy to violate the TSCA (Count Three); (ii) conspiracy to obstruct an official proceeding (Count Four); and (iii) substantive obstruction of an official proceeding (Count Five).

Following the Court's October 13, 2022 denial of the Prior Motion's request for dismissal, this matter was scheduled for trial on June 12, 2023. (ECF:32.) Thereafter, on February 24, 2023, upon the joint request of counsel, the trial date was postponed to July 10, 2023. (Electronic Order dated February 24, 2023.) In advance of that trial date, the government respectfully moves in limine for the relief described below.

II. Argument

As the Second Circuit has explained, "[t]he purpose of an in limine motion is to aid the trial process by enabling the court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir. 1996). Consistent with

---

[2] In particular, the superseding indictment alleged that, as with the abatement at the Freeport Residence, when the EPA requested further information about this project, Lynch again falsely identified Cantero as the project supervisor and submitted numerous forged documents to that effect. (S-1 ¶ 24-25.)

[3] As disclosed in discovery and as explained in the government's response in opposition to the Prior Motion, a records custodian at Ando International has attested that: (i) the company did not issue the certificate in question; (ii) the company has no record of Cantero ever attending its training; and (iii) the company did not even offer lead supervisor training on the dates specified in the certificate.

this aim, the government respectfully submits that the following requests are well-supported and can reasonably be expected to expedite the trial.

A. Lynch's Prior Conviction is Admissible During the Government's Case-in-Chief and on Cross-Examination

The government first seeks an in limine ruling, pursuant to Federal Rules of Evidence 609(a) and 404(b), that evidence of Lynch's prior New York State conviction for First-Degree Identity Theft, Second-Degree Possession of a Forged Instrument, and First-Degree Offering a False Instrument for Filing is admissible at trial, both to impeach Lynch if he testifies and, even if he doesn't, as direct evidence of the charged crimes during the government's case-in-chief.

In September 2011, following a jury trial, Lynch was convicted of: (i) first-degree identity theft, in violation of New York Penal Law ("N.Y.P.L.") § 190.80(3); (ii) second-degree possession of a forged instrument, in violation of N.Y.P.L. § 170.25; and (iii) first-degree offering a false instrument for filing, in violation of N.Y.P.L. § 175.35.[4] According to records disclosed in discovery on October 17, 2022, these charges stemmed from Lynch's unauthorized use of his son's identity, including his son's name and social security number, to inter alia fraudulently obtain a driver's license and open a credit card account. Lynch was sentenced to an indeterminate term of 42 months to seven years imprisonment, of which he served approximately 35 months, from October 25, 2011 to September 18, 2014.

As explained in further detail below, these facts are highly probative of Lynch's character for truthfulness and thus are permissible subjects of impeachment under Rule 609(a) if he chooses to testify. Even if Lynch does not testify, however, these facts clearly tend to establish his knowledge and intent, as well as the lack of any accident or mistake, and thus fit comfortably within the Second Circuit's "inclusionary" approach to admissibility under Rule 404(b).[5]

---

4 References herein to Lynch's "conviction" or "convictions" are solely to these three counts of conviction. The government does not seek to admit evidence of any other aspect of Lynch's criminal history.

5 In the Prior Motion, Lynch moved in limine to limit cross-examination into his criminal history. See Def. Mot. (ECF: 23) 7. Following argument, the Court reserved judgment. See Transcript of Proceedings Held on October 13, 2022 ("Oct. 13 Tr."), attached hereto as Exhibit B, at 17. At that time, in response to questioning by the Court, the government indicated that it did not anticipate offering evidence of the prior conviction unless Lynch testified. See id. at 14. By this motion, the government seeks leave to amend its prior representation and admit Lynch's prior conviction for the specific purposes detailed above. Indeed, in the intervening period, the grand jury has charged Lynch with additional counts of obstructing justice, making false statements, and aggravated identity theft in connection with a second criminal episode that is factually indistinguishable from the allegations in the original indictment. Against that backdrop, his prior conviction for substantially similar conduct is more probative than ever under Rule 404(b).

1. Fed. R. Evid. 609(a)

First, in the event the defendant chooses to testify, the plain language of Rule 609 permits the use of his prior conviction for impeachment purposes. As United States District Judge Jacob Mishler once wrote, "basic fairness" requires that the "story presented on direct [by the defendant] is measured for its accuracy and completeness by uninfluenced testimony on cross-examination." United States v. DiLapi, 651 F.2d 140, 151 (2d Cir. 1981) (Mishler, J., concurring). Applying Judge Mishler's logic here, any version of Lynch's story that omits his demonstrated history of misappropriating others' identities and falsifying official records would be woefully incomplete.

Rule 609 governs the admissibility of impeachment evidence of a prior criminal conviction and allows a witness's "character for truthfulness" to be attacked in certain circumstances. In particular, the rule allows for admission of a conviction within the last ten years, or a conviction resulting in confinement within the past ten years, in two relevant circumstances. First, Rule 609(a)(1)(B) provides that such evidence "must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant." Second, Rule 609(a)(2) explains that "for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement."

Describing the dual provisions of Rule 609, the Second Circuit has recognized that their "only difference . . . is that evidence of convictions for crimes involving 'dishonesty or false statement,' whether felonies or misdemeanors, must be admitted under Rule 609(a)(2) as being per se probative of credibility, while district courts, under Rule 609(a)(1), may admit evidence of a witness's felony convictions that do not constitute crimen falsi, subject to balancing pursuant to Rule 403." United States v. Estrada, 430 F.3d 606, 615–16 (2d Cir. 2005) (Sotomayor, J.). Here, Lynch's prior conviction is admissible under both standards.

a. Rule 609(a)(1)

This Court has broad discretion when deciding when to admit evidence of a defendant's prior conviction under Rule 609(a)(1). See United States v. Vasquez, 840 F. Supp. 2d 564, 567 (E.D.N.Y. 2011). In weighing the probative versus prejudicial value of impeaching a defendant with a prior conviction, courts generally consider five factors: "(1) the impeachment value of the crime; (2) the date of the conviction and the defendant's subsequent history; (3) the degree of similarity between the past crime and the charged crime; (4) the centrality of the credibility issue; and (5) the importance of the defendant's testimony." United States v. Thomas, 214 F. Supp. 3d 187, 195 (E.D.N.Y. 2016) (quoting United States v. Hayes, 553 F.2d 824, 828 (2d Cir. 1997)). However, "Rule 609(a)(1) presumes that all felonies are at least somewhat probative of a witness's propensity to testify truthfully." Estrada, 430 F.3d at 615. Under Rule 609(a)(1), the "evidence" of prior convictions that may be admitted includes "the essential facts of a witness's convictions, including the statutory name of each offense, the date of conviction, and the sentence imposed." Id. at 617. In this case, a fair application of the evaluative factors weighs decidedly in favor of admission.

First, the nature of Lynch's prior conviction is rooted in dishonesty and making false statements. As such, it has an obviously high impeachment value. See United States v. Elias, No. 18-CR-33 (NGG), 2022 WL 715486, at *5 (E.D.N.Y. Mar. 10, 2022) (explaining that when analyzing the nature of the crime, "past convictions involving dishonesty are most probative for untruthfulness," in contrast to "[c]rimes of violence" that are "generally less probative"). Indeed, as noted above, Lynch's prior felonies are presumptively probative of his likelihood to testify truthfully. See Estrada, 430 F.3d at 615.

Second, Lynch's prior conviction took place recently enough that he was serving his sentence within the ten-year limitations period contemplated by Rule 609. What's more, following his release, Lynch was again convicted, in 2017, of aggravated unlicensed operation of a motor vehicle in the second degree. While unrelated, that the conviction in question did not represent the defendant's last encounter with the criminal justice system weighs in favor of the government's request. Cf. Elias, 2022 WL 715486, at *6 (finding that the defendant's lack of any intervening convictions "weighs against admission").

Third, any differences between the prior conviction and the instant charges are insufficient to outweigh their obvious similarities. In that regard, it is true that Lynch previously impersonated a member of his family for personal reasons, i.e., to obtain a driver's license and credit card whereas in this case, he misappropriated the identity of a stranger for business reasons, i.e., to conceal faulty lead-based paint abatement and thwart an EPA investigation. At bottom, however, Lynch's proclivity toward misusing others' personal information and falsifying official documents is a critical through-line.[6]

---

[6] Some courts have relied on Gordon v. United States, 383 F.2d 936, 940 (D.C. Cir. 1967), cert. denied, 390 U.S. 1029 (1968), for the proposition that, for purposes of the third factor, "greater similarity counsels against admission." Elias, 2022 WL 715486, at *5 (emphasis added). As an initial matter, such an interpretation would appear to contradict intra-circuit authorities generally recognizing that, for purposes of Rule 404(b), "[a] greater degree of similarity increases the relevance of the prior acts." See United States v. Maisonneuve, 954 F. Supp. 114, 116-17 (D. Vt. 1997)). More fundamentally, though, Gordon did not establish a rule of general applicability that should materially alter the instant analysis. Rather, in dicta, the D.C. Circuit suggested that evidence of prior convictions for the "same crime" for which a defendant is on trial may present a heightened risk that lay jurors will misuse the prior conviction as propensity evidence. See 383 F.2d at 940. Thus, although the court opined that prior convictions for the same crime "should be admitted sparingly," it also made clear that its views did not constitute a legal rule: "We are well aware that these are not firm guidelines which can be applied readily as though they were part of the structure of the Federal Rules of Criminal Procedure; the very nature of judicial discretion precludes rigid standards for its exercise; we seek to give some assistance to the trial judge to whom we have assigned the extremely difficult task of weighing and balancing these elusive concepts." Id. at 941. In fact, the court's stated concern about the risks of admitting prior convictions did not prevent it from affirming Gordon's conviction after a trial where the district court had allowed him to be impeached with evidence of his prior convictions. See id. Moreover, the defendant in Gordon was convicted of robbery and assault with a dangerous weapon, and the evidence he challenged on appeal related to similar conduct. The court noted that the likelihood

Fourth, "[t]he court can only presume that the primary purpose of [Lynch's] testimony would be to rebut the evidence and testimony offered by the government during its case-in-chief by offering a different version of events than those offered by the government's witnesses." United States v. Brown, No. 07-CR-874 (KAM), 2009 WL 728448, at *10 (E.D.N.Y. Mar. 10, 2009). If he were to so testify, however, "[i]t would be patently unfair and misleading to the jury to 'allow[ ] [Lynch], if he [chooses] to take the stand, to appear 'pristine.''" Id. (quoting United States v. Ortiz, 553 F.2d 782, 785 (2d Cir. 1977)). Indeed, "credibility is central when, for example, the charged crime itself involves crimen falsi, like perjury or fraud." Elias, 2022 WL 715486, at *6. This factor thus weighs in favor of admission.

Finally, Lynch's testimony is far from essential to rebut the government's evidence. Lynch will have a full and fair opportunity to examine the individual whose identity he is alleged to have stolen, the EPA witnesses who will testify about the allegedly false statements made to them, and the victims who allege that Lynch violated regulations governing the proper abatement of lead-based paint in performing work for them. In addition, Lynch will have the opportunity to present alternative interpretations of the myriad documents the government intends to introduce during its case-in-chief, and to argue for favorable inferences to be drawn from them. At this stage, though, Lynch has yet to articulate any legal defense that would rest in any meaningful way on his testimony, let alone a coherent "story" that would be stifled without his narration. Cf. id. (observing that "the more important the defendant's testimony relative to other evidence—in the sense that, without it, the defense's story has little other means of being advanced—the less willing a court should be to admit evidence of a prior conviction.").

After weighing these relevant factors, the Court should admit Lynch's prior convictions to impeach him pursuant to Rule 609(a)(1), if he chooses to testify.

b. Rule 609(a)(2)

Lynch's prior conviction is also admissible impeachment evidence under Rule 609(a)(2). For purposes of that subsection, the party "desiring to take advantage of automatic admission of a conviction under the second prong [of Rule 609] must demonstrate to the court that a particular prior conviction rested on facts warranting the dishonesty or false statement description." Hayes, 553 F.2d at 827 (internal quotation marks omitted). Upon such a showing, "the Court has no discretion to exclude convictions involving false statements because such convictions are inherently more probative than prejudicial as to the witness's capacity for truthfulness." United States v. Ilori, No. 21-CR-00746 (MKV), 2022 WL 2452258, at *7 (S.D.N.Y. July 5, 2022); see also Hayes, 553 F.2d at 827 ("[E]vidence of conviction of a certain type of crime—one involving 'dishonesty or false statement'—must be admitted, with the trial court having no discretion, regardless of the seriousness of the offense or its prejudice to the defendant.").

---

of jurors inferring a propensity for violence was unique unto itself, rendering its applicability here minimal: "convictions which rest on dishonest conduct relate to credibility whereas those of violent or assaultive crimes generally do not." Id. at 940.

As outlined above, Lynch was convicted of identity theft, possessing a forged instrument, and offering a false instrument for filing in connection with the unauthorized use of his son's name and social security number to fraudulently obtain a driver's license and open a credit card account. "All of these crimes involved dishonesty or false statements and thus, are per se probative of credibility under Rule 609(a)(2)." Ilori, 2022 WL 2452258, at *7 (relating to identity theft and fraud). Accordingly, evidence of that conviction is "inherently more probative than prejudicial as to [Lynch's] capacity for truthfulness, Hayes, 553 F.2d at 827, and "must" be admitted under Rule 609(a)(2).[7]

2. Fed. R. Evid. 404(b)

Even if Lynch does not testify in his own defense, evidence of his prior conviction should be admitted under Rule 404(b) during the government's case-in-chief. Under Rule 404(b), evidence of other crimes, wrongs, and acts is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). The Second Circuit "has adopted an 'inclusionary' approach to other act evidence under Rule 404(b), which allows such evidence to be admitted for any purpose other than to demonstrate criminal propensity." United States v. Alvarez, 541 F. App'x 80, 86 (2d Cir. 2013) (summary order) (quoting United States v. LaFlam, 369 F.3d 153, 156 (2d Cir. 2004) (per curiam)). In general, "the government is required to establish only a similarity or some connection to establish that a prior act is relevant." United States v. Douglas, 415 F. App'x 271, 273 (2d Cir. 2013) (summary order) (quotation omitted). In that regard, "similarity" does not require "synonymity," United States v. Aminy, 15 F.3d 258, 260 (2d Cir. 1994), and such "evidence of prior or similar acts may be introduced during the government's case-in-chief, 'rather than waiting until the conclusion of the defendant's case,'" United States v. Pitre, 960 F.2d 1112, 1120 (2d Cir. 1992) (quoting United States v. Caputo, 808 F.2d 963, 968 (2d Cir. 1987)).

One permissible purpose for which the Court can admit a prior conviction is for the government to demonstrate a defendant's knowledge and intent to commit a charged crime. "The law is clear that where a defendant claims that he lacked the knowledge or intent to commit the charged offense, the Government is permitted to introduce evidence of the defendant's other convictions for similar conduct." Ilori, 2022 WL 2452258, at *5 (admitting evidence of prior identity theft and fraud convictions to demonstrate knowledge and intent in identity theft and fraud case); see United States v. Moreno, 10-CR-564-LTS, 2011 WL 1642274 (S.D.N.Y. Apr. 25, 2011) (admitting evidence of prior identity theft conviction to demonstrate knowledge and intent in access device fraud and aggravated identity theft case). District courts throughout this Circuit routinely admit prior convictions for fraud-related crimes as proof of a defendant's knowledge and intent to commit the fraud-related crimes that are the subject of a pending indictment. See, e.g., United States v. Mills, 895 F.2d 897, 907 (2d Cir. 1990) (affirming admission of evidence of prior

[7] Rule 608(b) also permits cross-examination of specific instances of conduct of a principal witness if "probative of the character for truthfulness or untruthfulness" of that witness. Fed. R. Evid. 608(b). While the government submits that Rule 608, too, provides a basis for admission of the defendant's prior conviction—and the government is prepared to brief the import of this Rule at the Court's request—we submit the Court need not consider whether the prior conviction is also admissible under Rule 608 given its clear admissibility under Rule 609.

counterfeiting conviction to rebut claim defendant was unaware of receipt of counterfeit money); United States v. Alcantara, 674 F. App'x 27, 30 (2d Cir. 2016) (summary order) (evidence of prior conviction for conspiracy to commit tax fraud properly offered to prove knowledge and intent for tax fraud and identity theft charges).

In this case, Lynch has contested the government's assertions that certain forged documents forming the basis of the aggravated identity theft allegations are, in fact, fraudulent. See Def. Mot. 3–4. He has further argued that there is "no basis for claiming Mr. Lynch knowingly made false statements to the EPA." Id. at 4. To rebut these contentions regarding his knowledge and intent, and the implied possibility of some accident or mistake, evidence of Lynch's prior conviction for identity theft and forged instrument offenses, following a trial at which evidence of those crimes was introduced in his presence, should clearly be admitted under Rule 404(b). Lynch's prior conviction shows that he clearly had the requisite knowledge and intent to commit the charged crimes in the superseding indictment because of their similarity to the conduct underlying his past criminal convictions.

Indeed, as noted above, the acts underlying Lynch's prior conviction are substantially similar to the obstruction of justice, false statements, and aggravated identity theft counts charged in the superseding indictment. Specifically, his prior conviction involved forging documents, including the name and means of identification of another person, submitting fraudulent materials to a governmental body, and using another's identity to impersonate him. In fact, Lynch's prior conviction for first-degree identity theft is a state-level analogue to the specific Aggravated Identity Theft charges he is currently facing.[8] His prior conviction related to forged instruments is likewise similar to the charges here for obstruction of justice and making false statements.[9] As noted above, in this Circuit, "similarity" does not require "synonymity" for the admission of Lynch's prior conviction, Aminy, 15 F.3d at 260, and "only a similarity or some connection" is required to establish relevancy, Douglas, 415 F. App'x at 273.

The government has more than established such a connection: just as Lynch previously misappropriated his son's name and personal identifying information to perpetrate another felony, as alleged in the instant indictment he also misappropriated David Cantero's name

[8] A conviction for first-degree identity theft requires proof that Lynch "knowingly and with intent to defraud assume[d] the identity of another person by presenting himself . . . as that other person, or by acting as that other person or by using personal identifying information of that other person, and thereby . . . commit[ed] or attempt[ed] to commit a class D felony or higher level crime or acts as an accessory in the commission of a class D or higher level felony." N.Y. Penal L. § 190.80(3).

[9] A conviction for second-degree criminal possession of a forged instrument required proof that Lynch "utter[ed] or possesse[d]" a forged instrument, including a credit card, knowing that the instrument was forged and "with intent to defraud, deceive or injure another." Id. §§ 170.25, 170.10. And a conviction for first-degree offering a false instrument for filing required proof that he presented a written instrument he knew to contain a false statement or false information to a public office for filing "with intent to defraud the state or any political subdivision, public authority or public benefit corporation of the state." Id. § 175.35(1).

and personal identifying information to cover-up his felony violations of the TSCA. Furthermore, just as Lynch presented forged documents to be filed at the DMV to fraudulently obtain a driver's license in his son's name, he presented forged documents to the EPA falsely identifying Cantero as the EPA-certified supervisor who oversaw the abatement work at the Freeport Residence and the Roslyn Childcare Center, and falsely disclaiming any responsibility for the illegal nature of those projects. As such, the prior conviction is highly probative of Lynch's knowledge and intent, which Lynch has already put at issue in this case, and the absence of an accident or mistake.

While the Court must be mindful to exclude unfairly prejudicial evidence under Rule 403 when necessary, evidence that is otherwise admissible under Rule 404(b) should not be excluded unless it "involve[s] conduct more inflammatory than the charged crime." United States v. Paulino, 445 F.3d 211, 223 (2d Cir. 2006). Here, the probative value of Lynch's prior conviction for similar conduct substantially outweighs any danger of unfair prejudice. Indeed, his prior conduct is not "any more sensational or disturbing than the crimes with which" he is currently charged. United States v. Roldan-Zapata, 916 F.2d 795, 804 (2d Cir. 1990). If, however, the Court finds that the identity of Lynch's son as the victim of his prior crime is unduly inflammatory, the government submits that the son's identity and relationship to Lynch can be omitted from the otherwise lawful presentation of "the essential facts of [the] convictions, including the statutory name of each offense, the date of conviction, and the sentence imposed." Estrada, 430 F.3d at 617.

Based on the foregoing, Lynch's prior conviction for identity theft and related offenses is admissible pursuant to Rule 404(b) during the government's case-in-chief.

### B. Lynch Should be Precluded from Raising a Defense Based on the Renovation, Repair and Painting Rule

In the Prior Motion, Lynch sought to dismiss Count One of the original indictment charging him with violating the TSCA. See Def. Mot. 5–6. As the Court may recall, Lynch argued that the TSCA's implementing regulations relating to the abatement of lead-based paint—and, by extension, the jurisdictional reach of the EPA—did not apply to "minor repair and maintenance activities." Id. In that regard, Lynch attempted to recast the abatement work he performed at the Freeport Residence as "an emergency renovation" that affected less than six square feet of painted surface. Id.

As outlined in the government's opposition, however, there plainly exists no jurisdictional carve-out from the lead-based paint abatement regulations for "minor repair and maintenance activities." See Govt. Opp. 4. On the contrary, the government showed that the statute provides mutually exclusive definitions of "abatement," which applies without limitation to the size of the project, and "renovation." Compare 15 U.S.C. § 2681(1) (defining "abatement" without size-based qualification) with 40 C.F.R. § 745.80 (defining "renovation" and noting that the term does not include "activity [that] is performed as part of an abatement . . ."). Moreover, the government showed that there is no overlap whatsoever in the regulations governing the proper abatement of lead-based paint and the so-called Renovation, Repair and Painting Rule applying to home contracting work. Compare 40 C.F.R. §§ 745.220—745.239 (collectively titled "Lead-Based Paint Activities") with id. §§ 745.80—745.88 (collectively titled "Residential Property Renovation").

As the government noted:

> The disparity between these two sets of standards is apparent—one applies to activities that are designed to permanently eliminate lead-based paint hazards (abatement) while the other applies to activities that, while not directly intended to remediate lead hazards, may nevertheless disturb lead-based paint in the course of home contracting work (renovation). For that reason, it is both natural and logical that an exception would exist for home "renovations" that incidentally disturb a de minimis painted area. Thus, the definition of "renovation" excludes so-called "minor repair and maintenance activities," or "activities . . . that disrupt 6 square feet or less of painted surface per room for interior activities." 40 C.F.R.§ 745.83.

Govt. Opp. 5.

Although Lynch could theoretically have proffered evidence that his work at the Freeport Residence was not designed to permanently eliminate lead-based paint hazards, and therefore was not an "abatement," the government showed that such a proposition was contrary to all the evidence in the record, including the documents Lynch attached to his own motion. See, e.g., Def. Mot. 2 (stating that the NCDOH approved the defendant's "abatement proposal" for the Freeport residence); see id. at Ex. B, ¶ 5 (acknowledging in a sworn affidavit that the defendant was retained "to do an abatement"); see id. Ex. C (describing the anticipated project on an invoice as "lead abatement").

To be sure, confronted with the government's submission, Lynch effectively conceded the correctness of its position by failing to file a reply brief or arguing against the government's interpretation of the applicable regulatory regime. Indeed, at the motion hearing held on October 13, 2022, Lynch's counsel conceded not only that Lynch's argument favoring dismissal based on the Renovation, Repair and Painting Rule was likely mooted by the government's submission but also that Lynch's work constituted an abatement, not a renovation:

THE COURT: . . . And the there's another piece here that might be moot and, Mr. Rosenberg, I'm interested in your views. I looked at Mr. Bagnuola's submission concerning the jurisdictional question you raised. This all turns on whether this is a renovation or—I'm going to lose the other word—whether you were cleaning out the lead paint, abatement, if it is under the abatement section. It appears that the size of the project doesn't matter.

Have you found anything to show me that Mr. Bagnuola is wrong on that?

DEFENSE COUNSEL: I can't find case law that would say he's wrong. It's a very creative-type of prosecution, a brilliant administrator of law, and I think it's kind of open knowledge that most situations involving a much larger square footage, usually you end up with a very low civil fine to a

company for a violation of something. In this particular case, though, I think this is a case of first impression.

I read of one case out of the federal court in this region that involved a conviction with an abatement issue that was under the Toxic Substances Act, but, really—and I want Mr. Bagnuola to speak to this, if he knows—this is a case of first impression as to this particular sub-section of this kind of prosecution.

THE COURT: Let me add one other factor, which is, despite the volume of work, I do read everything, and the attachment [to Lynch's motion], if I were to characterize it, this is not an amateur characterization, I would say that it appeared that Mr. Lynch was hired for the purpose of abatement, not to do an entire renovation.

DEFENSE COUNSEL: Correct . . .

Ex. B at 4–5.

Although the Court denied the motion to dismiss, counsel left open the possibility that Lynch would argue the applicability of the Renovation, Repair and Painting Rule at trial: "given the fact that we believe it is under a certain square footage, and the way the statute is written, we think it could go both ways reasonably under the law." Id. at 5. But the inapplicability of the Renovation, Repair and Painting Rule has been determined by the Court and the record contains no factual basis to conclude that Lynch performed a "renovation" at either of the jobsites referenced in the superseding indictment. As such, he should be precluded from arguing to the jury that a defense to the instant charges exists for conduct affecting six square feet or less of painted surface and, more broadly, that the Renovation, Repair and Painting Rule somehow applies to this case.

The Second Circuit has held that a "federal court may preclude a defendant from presenting a defense when 'the evidence in support of such a defense would be legally insufficient.'" United States v. Williams, 389 F.3d 402, 404 (2d Cir. 2004) (quoting United States v. Villegas, 899 F.2d 1324, 1343 (2d Cir. 1990)). Therefore, a "defendant is entitled to an affirmative defense only if the defense 'has a foundation in the evidence.'" United States v. Gonzalez, 407 F.3d 118, 122 (2d Cir. 2005) (quoting United States v. Podlog, 35 F.3d 699, 704 (2d Cir. 1994)). Indeed, as United States District Judge Arthur D. Spatt once observed, "there is precedent for precluding a criminal defendant from presenting a particular defense by granting a motion in limine" and "[t]he sole question presented in such situations is whether the evidence, as described by the defendant, is insufficient as a matter of law to support the proffered defense." United States v. Scully, No. 14-CR-208 (ADS) (ECF:89) (Short Form Order setting a pretrial hearing "to determine whether sufficient questions or fact exist to warrant permitting the jury to hear evidence of the advice-of-counsel defense") (citations and quotation marks omitted).

Applying these standards, it is clear that Lynch should not be permitted to introduce a trial defense that does not apply as a matter of law. As outlined above, there is no dispute of fact

about the nature of Lynch's work. Invariably, the arguments Lynch raised in the Prior Motion and the documents he proffered in support of his position established that he was, in fact, hired to conduct an abatement at the Freeport Residence—he has yet to identify a single item of evidence suggesting that the project was a renovation. Not surprisingly, then, at oral argument Lynch's counsel agreed with the Court's impression that Lynch "was hired for the purpose of abatement, not to do an entire renovation." Ex. A at 4–5. Under these circumstances, the relevant authorities compel the preclusion of any defense to the contrary.

Indeed, as Judge Spatt explained, the sole question in determining whether evidence of a defense may be put to a jury is whether "the evidence, described by the defendant, is insufficient as a matter of law . . ." (emphasis supplied). To be sure, following an evidentiary hearing in Scully, Judge Spatt only allowed the jury to hear the defendant's preferred defense after concluding that "the evidence [was] largely disputed." United States v. Scully, No. 14-CR-208 (ADS), 2015 WL 5826493, at *6 (E.D.N.Y. Oct. 6, 2015) (noting that because "the Defendant contests the meaning attributed by the Government to virtually every item of documentary evidence" and "the evidence is susceptible of more than one reasonable interpretation," there existed "numerous potential factual issues of varying magnitudes, which, in the Court's view, require adjudication by a jury . . .").

By contrast, this case involves no legitimate factual dispute concerning the nature of Lynch's work: he was hired to perform an abatement which, as a matter of law, triggered the lead-based paint abatement regulations without regard to the size of the project; significantly, those regulations governed to the exclusion of the Renovation, Repair and Painting Rule, which applies solely to home renovations. As such, there is no legal or factual basis to permit the jury to hear about that rule notwithstanding Lynch's subjective "belief" that "it could go both ways" because "it is under a certain square footage." Ex. B at 5. To avoid juror confusion, the Court must preclude Lynch from raising a defense at trial based on the Renovation, Repair and Painting Rule.

### C. The Defendant Should be Precluded from Arguing or Commenting Upon the Government's Motives and/or the Novelty of This Prosecution

The government lastly seeks an in limine ruling that Lynch and his counsel are precluded from arguing, commenting upon, or otherwise introducing at trial the fact that this is a case of first impression.

Throughout the pretrial phase of this case, Lynch has repeatedly suggested that the government's prosecution was somehow vindictive, retaliatory, selective, or otherwise conducted based on factors other than good faith enforcement of federal law and the pursuit of justice. See, e.g., Def. Mot. 3, 8 (surmising about "retaliatory elements to this prosecution"); Transcript of Proceedings Held on December 17, 2021 ("Dec. 17 Tr."), attached hereto as Exhibit C, at 4 (expressing Lynch's "view" that the instant charges are retaliation for "bring[ing] a civil action"); Ex. B at 4 (referring, without a factual or legal citation, to "open knowledge" that conduct like Lynch's usually results in "a very low civil fine"). To date, none of these nakedly speculative assertions has been accompanied by any proof. Of particular concern as trial approaches, however, is Lynch's willingness to tie his apparently baseless suspicions to the fact that this is a case of first impression, wrongly implying that he is the first person charged under a newly enacted felony provision of the TSCA because of some improper reason. Id. Because any such contentions are

plainly unsupported, irrelevant, and likely to confuse, mislead, and nullify the jury, they must be barred at the trial.

Federal Rule of Evidence 402 provides that "[i]rrelevant evidence is not admissible," and Rule 403 further provides that the Court may "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Evidence that does not bear on a defendant's guilt or innocence of the charges in the indictment or is likely to distract the jury from the issue of guilt or innocence, should be excluded. See, e.g., United States v. Rosado, 728 F.2d 89, 93 (2d Cir. 1984) (criticizing admission of evidence about the propriety of a prosecution "for turning the trial away from a determination of whether the elements of the offense charged had been proved beyond a reasonable doubt into a wide-ranging inquiry into matters far beyond the scope of legitimate issues in a criminal trial").

Additionally, the district court has "broad discretion" in controlling arguments to the jury. Herring v. New York, 422 U.S. 853, 862, (1975). Courts have consistently held—and given jury instructions reflecting—that arguments regarding the government's decisions during an investigation and its motives and timing in bringing charges are irrelevant, unduly prejudicial, and improperly inviting of jury nullification. See, e.g., Rosado, 728 F.2d at 93 (arguments about selective prosecution "invited jury nullification by questioning the Government's motives in subpoenaing appellants and prosecuting them for contempt"); United States v. Reese, 933 F. Supp. 2d 579, 583–84 (S.D.N.Y. 2013) ("[A] defendant 'may not argue before the jury issues relating to the overall propriety of the Government's investigation in this case.'") (quoting United States v. Demosthene, 334 F. Supp. 2d 378, 380 (S.D.N.Y. 2004)); United States v. Stewart, No. 03-CR-717 (MGC), 2004 WL 113506, at *1 (S.D.N.Y. Jan. 26, 2004) (granting motion to preclude defendant from "presenting arguments or evidence that would invite the jury to question the Government's motives in investigating and indicting [the defendant]").[10] Indeed, because a "presumption of regularity" attaches to prosecutorial decisions, courts must presume "in the absence of clear evidence to the contrary" that prosecutors "have properly discharged their official duties." United States v. Armstrong, 517 U.S. at 456, 464 (1996).

Because there exists no non-speculative basis—let alone "clear evidence"—that the instant prosecution is retaliatory, vindictive or otherwise improper, the Court must presume the regularity of the government's charging decision and preclude Lynch and his counsel from

---

[10] See also United States v. Knox, 687 F. App'x 51, 54–55 (2d Cir. 2017) (summary order) (instructing jury that the "government is not on trial" is "appropriate" (internal quotation marks omitted)); United States v. Preldakaj, 456 F. App'x 56, 60 (2d Cir. 2012) (summary order) (affirming instruction that "[y]ou have heard reference, in the arguments of defense counsel in this case, to the fact that certain investigative techniques were not used by law enforcement authorities[, but t]he government is not on trial, and law enforcement techniques are not your concern"); United States v. Saldarriaga, 204 F.3d 50, 52 (2d Cir. 2000) (affirming jury charge stating that "[t]he government's function is to give enough evidence to satisfy you beyond a reasonable doubt that the charges are true, and the fact that there are a thousand other things they could have done is wholly irrelevant" (internal quotations and alterations omitted)).

suggesting otherwise to the jury. As explained above, although Lynch has repeatedly hinted at impropriety, he has yet to come forward with any evidence to substantiate such a serious allegation. As the government wrote in opposition to such intimations in the Prior Motion:

> The defendant also states that he "has reason to believe that there are retaliatory elements to the prosecution of this case, and that a Bill of Particulars will inform against these suspicions." (Mot. 4.) Because the Motion does not develop this argument, either by disclosing the basis for the defendant's belief that his prosecution is retaliatory or by explaining how a bill of particulars might address that concern, the government respectfully submits that the defendant's argument, which is concededly based on "suspicion," does not require a response at this time.

Govt. Opp. 6 n.2.

In response to this direct and unambiguous challenge to proffer some basis for his accusations about the government's motives, Lynch did nothing—conspicuously failing to file a reply proffering a non-speculative basis to "believe there are retaliatory elements to the prosecution" and offering none at the motion hearing. As such, any attempt to connect the novelty of this prosecution to an improper motive in the minds of the jury would be highly improper.

Although Lynch and his counsel have been free to hypothesize about the instant charges during pretrial proceedings, they are not free to taint the jury with unfounded accusations about the government's motives. Indeed, given Lynch's apparent inability to substantiate his claims, the Court has a duty to prevent them from reaching the jury to prevent an attempt at nullification. See United States v. Thomas, 116 F.3d 606, 614–16 (2d Cir. 1997) ("We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent." (internal quotation marks and citation omitted)). The jury's attention belongs on "the evidence or lack of evidence that had been presented at trial," Saldarriaga, 204 F.3d at 52, not on the government's investigative decisions or motives in the prosecution. Accordingly, the defendant should be precluded from raising any argument or introducing any evidence on these issues.

III. Conclusion

Based on the foregoing, the instant motion should be granted in its entirety.

Respectfully submitted,

BREON PEACE
United States Attorney

By: /s/
Anthony Bagnuola, (631) 715-7849
James R. Simmons, (718) 254-7511
Assistant U.S. Attorneys

Jason P. Garelick
Special Assistant U.S. Attorney

cc: Clerk of Court (GRB) (via ECF and e-mail)
Counsel of Record (via ECF and e-mail)