**Nancy Tang of Counsel**
**To the Law Office of Jonathan Rosenberg**
137 Court St
Brooklyn, NY 11201
Tel.: 917-589-6868
Email.:nyc.nancytang@gmail.com

June 26, 2023

HONORABLE GARY R. BROWN
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

        Re:    United States v. Rickey Lynch
                  Criminal Docket No. 21-405 (S-1) (GRB)

Dear Judge Brown:

In accordance with Rule IV(a) of the Court's Individual Practice Rules, and in advance of the trial scheduled for July 10, 2023 in the above-referenced matter, the defendant respectfully moves in limine:

(i)    To preclude the government from admitting evidence of the Defendant's prior New York State conviction.

(ii)    To permit Lynch to from raising a defense at trial based on the so-called Renovation, Repair and Painting Rule.

### A. Lynch's Prior Conviction is Inadmissible During the Government's Case-in-Chief and on Cross-Examination

Mr. Lynch's prior conviction, a 12-year-old case, should be excluded from the current proceedings, as per Federal Rule of Evidence 403 and 404. Its admission is both irrelevant to the charges at hand and prejudicial, diverting attention from the current case's merits to past events.

The introduction of Mr. Lynch's criminal history may confuse the jury and misdirect their focus. The government must prove Mr. Lynch's guilt for the current offenses beyond a reasonable doubt without leaning on past convictions. Furthermore, introducing his past

conviction as evidence is more prejudicial than probative, especially given that the government plans to present an alleged co-conspirator's testimony.

Mr. Lynch's past conviction does not contribute to proving motive, opportunity, intent, or any other exceptions permitted under Rule 404(b)(2). Instead, it seems intended to establish a propensity for criminal behavior, a usage expressly forbidden by Rule 404(b)(1). This would risk prejudicing the jury and compromise Mr. Lynch's right to a fair trial.

The government's reference to Cf. Elias, 2022 WL 715486, at *6, which itself cites the Second Gordon Factor as detailed in Gordon v United States, 383 F2d 936, 940-41 [DC Cir 1967], is particularly pertinent to the case of Mr. Lynch. The Gordon ruling underscores a crucial point, stating, "One important consideration is what the effect will be if the defendant does not testify out of fear of being prejudiced because of impeachment by prior convictions."

Although a judge may deem prior convictions as relevant to credibility and the risk of prejudice to the defendant not sufficient to warrant their exclusion, he or she may still conclude that the jury's access to the defendant's account of events outweighs the potential for the defendant to withhold testimony due to fear of impeachment.

This principle holds significant implications for Mr. Lynch's case. The fear of prejudice arising from a 12-year-old conviction may deter Mr. Lynch from testifying, thereby depriving the jury of crucial insights into his perspective on the case at hand. This factor underscores the importance of considering the prejudicial impact of admitting evidence of Mr. Lynch's previous conviction.

In light of these reasons, and considering the significant time elapsed since Mr. Lynch's past conviction, we urge that the court exclude this prejudicial and irrelevant evidence from the current trial, as in accordance with Federal Rule of Evidence 404(b)(2). This measure is essential to maintain justice and fairness in the proceedings.

### B. Mr. Lynch should be permitted to raise a defense at trial based on the EPA's Renovation, Repair and Painting Rule.

Mr. Lynch received a letter from the EPA dated February 21, 2020 attached herein as Exhibit A address to:

> Mr. Rickey Lynch
> Bright Lights Supreme Cleaning Incorporated
> 208 Beach 77th Street Unit B
> Arverne, New York

The letter further goes on to detail that it is sending out the letter to Mr. Lynch because it has come to the EPA's attention that abatement activity was conducted by Mr. Lynch's firm or on his behalf. Then the EPA's letter cites that "Lead Based Paint Activities (Abatement) Rule and

state the compliance requirements. Further noting "if you are applying "Interim Controls" as the term is defined in 40 CFR § 745.223, those measures are considered to be renovations covered under the provisions of the Renovation, Repair and Painting (RRP) Rule unless they meet the definition of "Minor Repair" provided in 40 CFR § 745.83."

      40 CFR § 745.223 defines "Interim Controls" as:

> Interim controls means a set of measures designed to temporarily reduce human exposure or likely exposure to lead-based paint hazards, including specialized cleaning, repairs, maintenance, painting, temporary containment, ongoing monitoring of lead-based paint hazards or potential hazards, and the establishment and operation of management and resident education programs.

      40 CFR § 745.223 defines "Minor Repair" as:

> *Minor repair and maintenance activities* are activities, including minor heating, ventilation or air conditioning work, electrical work, and plumbing, that disrupt 6 square feet or less of painted surface per room for interior activities or 20 square feet or less of painted surface for exterior activities where none of the work practices prohibited or restricted by § 745.85(a)(3) are used and where the work does not involve window replacement or demolition of painted surface areas. When removing painted components, or portions of painted components, the entire surface area removed is the amount of painted surface disturbed. Jobs, other than emergency renovations, performed in the same room within the same 30 days must be considered the same job for the purpose of determining whether the job is a minor repair and maintenance activity.

      Mr. Lynch's activities, as alleged in the present case, are encompassed within the Minor Repair Act's purview, given that each job disrupted a mere 6 square feet or less. Additionally, even if the government were to contend that these activities do not meet the Minor Repair Act's criteria, Mr. Lynch's reliance on the Environmental Protection Agency's (EPA) letter should still be taken into account, as it directly reflects his state of mind at the time.

      It is crucial to acknowledge that the EPA, fully aware that they are corresponding with contractors engaged in construction - not individuals well-versed in law or legal interpretation - provides these letters. The agency recognizes that an "abatement" action has been carried out and subsequently clarifies how such "abatement" activities may fall within the scope of Interim Controls or Minor Repairs. The Environmental Protection Agency (EPA) encouraged contractors, including Mr. Lynch, to depend on the contents of their correspondence for guidance on compliance with EPA regulations. In light of this, denying Mr. Lynch the opportunity to

present the aforementioned letter and articulate his subsequent reliance on it would arguably be inequitable.

In the pursuit of justice and fairness, it is vital to acknowledge the context under which the Environmental Protection Agency (EPA) disseminated its letter concerning the Renovation, Repair, and Painting (RRP) Rule. The government's argument to deny the defendant the ability to raise the defense of the RRP Rule contradicts the initial directive of the EPA, which actively encouraged contractors to adhere to this rule.

This official guidance, presented by the EPA, an authoritative entity responsible for instituting and enforcing environmental regulations, served as a trusted basis for contractors to plan and execute their operations. The defendant, along with numerous other contractors, relied on this guidance in good faith, modifying practices and making business decisions predicated on the legitimacy and accuracy of the EPA's directives.

The defendant's reliance on the EPA's communication was based on a reasonable expectation of its reliability, accuracy, and governmental approval. The defendant's actions were not only in compliance with the rule but were also taken with a good faith belief in the rule's applicability and permanence. Thus, they acted in the legitimate trust that they were operating within the guidelines laid out by the government.

Now, to deny the defendant the right to cite the defense of the RRP Rule would unjustly penalize the defendant for actions that were taken with a good faith understanding of the rule and its compliance requirements. This not only sets a concerning precedent for the defendant but also introduces a level of uncertainty within the wider industry, potentially undermining confidence in the integrity and reliability of the EPA's instructions.

Furthermore, the principles of fairness and consistency in the application of the law call for the defendant to be allowed to raise the defense of the RRP Rule. Neglecting to do so would in effect punish the defendant for decisions made in good faith, based on a reasonable understanding of the EPA's directives. Consequently, it would be inconsistent with the principles of justice and fairness for the government to restrict the defense of the RRP Rule, especially when it was on the basis of the government's guidance that these actions were undertaken in good faith.

This line of argument aligns with Federal Rule of Evidence 404(b)(2), which permits the admission of evidence to prove aspects such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The evidence of Mr. Lynch's reliance on the EPA's letter is not only relevant, but crucial. It sheds light on his actions and beliefs at the time, thereby offering insight into his intentions. Given these considerations, the evidence in question should be deemed admissible.

C. Conclusion

Accordingly, the Defendant requests the Court to order that:

- The Government be precluded from admitting evidence of the Defendant's prior New York State conviction.

- The Defendant be allowed to raise a defense at trial based on the so-called Renovation, Repair and Painting Rule.

            Respectfully Submitted,

            s/Nancy Tang
            NANCY TANG of counsel to the
            Law Office of Jonathan Rosenberg
            137 Court St. 2nd Fl
            Brooklyn, NY 11201
            Attorneys for Defendant
            Rickey Lynch
            Tel.: 917-589-6868
            Email:nyc.nancytang@gmail.com

# EXHIBIT A



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**

REGION 2
2890 WOODBRIDGE AVENUE
EDISON, NEW JERSEY 08837-3679

FEB 2 1 2020

**CERTIFIED MAIL RETURN RECEIPT REQUESTED**
Article Number 7017 0660 0000 9509 6150

Mr. Rickey Lynch
Bright Lights Supreme Cleaning Incorporated
208 Beach 77th Street Unit B
Arverne, New York

RE:   **Request for Information by U.S. Environmental Protection Agency, Region 2**

Dear Mr. Lynch:

It has come to the attention of the U.S. Environmental Protection Agency (EPA) that abatement activity was conducted by your firm or on your behalf at: **247 Moore Avenue, Freeport, New York**. Our records indicate that this address meets the definition of target housing; therefore, lead abatements are regulated under section 402 of the Toxic Substances Control Act (TSCA).

The Lead Based Paint Activities (Abatement) Rule requires that *firms performing lead abatement projects in target housing and child-occupied facilities (see 40 CFR § 745.223) be certified by EPA and follow other requirements including the use of lead-safe work practices.* Please note that if you are applying "Interim Controls" as that term is defined in 40 CFR § 745.223, those measures are considered to be renovations covered under the provisions of the Renovation, Repair and Painting (RRP) Rule unless they meet the definition of "Minor Repair" provided in 40 CFR § 745.83.

Failure or refusal to comply with these Rules is a prohibited act under TSCA § 409, 15 U.S.C. § 2689 that could result in the assessment of a fine. As a certified firm for both RRP and Abatement activities, you know that activities like sanding, cutting, and demolition can create hazardous lead dust and chips by disturbing lead-based paint, which can be harmful to adults and children.
Several enclosures have been included with this letter:

- A list of questions regarding the above-mentioned activities. Your answers to these questions will be evaluated by the EPA to determine your level of compliance with the Abatement Rule.

- The EPA may use the information you provide in response to this request in an administrative, civil or criminal action. This information request is not subject to the requirements of the Paperwork Reduction Act, 44 U.S.C. § 3501, et seq., because it seeks to collect information from a specific individual or entity as part of an administrative action or investigation;

- An affidavit, which must be completed and returned along with your response and any documents that you provide; and

(Turn Over)