

U.S. Department of Justice

United States Attorney
Eastern District of New York

AXB
F. #2020R00569

610 Federal Plaza
Central Islip, New York 11722

July 5, 2023

By ECF and E-Mail

The Honorable Gary R. Brown
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

      Re:    United States v. Rickey Lynch
                  Criminal Docket No. 21-405 (S-1) (GRB)

Dear Judge Brown:

      The government respectfully submits this letter in opposition to defendant Rickey Lynch's submission of July 5, 2023, which he has styled as a "motion for reconsideration." (ECF:52). That application requests that the Court overrule its prior Order, pursuant to Federal Rules of Evidence 401 and 403, precluding the defendant from raising a defense at trial based on the Renovation, Repair and Painting ("RRP") rule. (July 5, 2023 Electronic Order (the "In Limine Order")). Because the motion seeks merely to relitigate prior unsuccessful arguments, however, it falls well short of the exacting standard of review and must be denied in its entirety.

      As the Court is aware, there is no specific rule providing for the reconsideration of a ruling on a criminal matter. See United States v. Basciano, No. 03-CR-929 (NGG), 2008 WL 905867, at *1 (E.D.N.Y. Mar. 31, 2008). Thus, when faced with a motion seeking reconsideration, courts apply the same "strict" standard that applies in the civil context, namely, "reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." United States v. Nix, 271 F. Supp. 3d 436, 440 (W.D.N.Y. 2017) (quoting Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)). Potential grounds for reconsideration may include an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice, but "[t]hese criteria are strictly construed against the moving party so as to avoid repetitive arguments on issues that have been considered fully by the court." Id. (internal citations omitted). Indeed, "a motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." Id. (quoting

Shrader, 70 F.3d at 257). Rather, reconsideration is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of judicial resources." Id.

Applying this standard, it is clear that reconsideration is unwarranted here. The defendant has identified no controlling decisions or data the Court overlooked; no change in controlling law; no newly available evidence; and no credible basis to believe that the In Limine Order constitutes clear error or a manifest injustice. On the contrary, the defendant's motion does precisely what the law forbids: it seeks solely to relitigate an issue already decided. Indeed, a comparison of the defendant's latest submission (the "2d Mot.") with his prior submission (the "1st Mot.") reveals the two to be substantively identical, highlighting the lack of any legitimate change in circumstance that would justify the "extraordinary" relief the defendant seeks. E.g., compare 1st Mot. at 3 ("[E]ven if the government were to contend that these activities do not meet the Minor Repair Act's criteria, Mr. Lynch's reliance on the Environmental Protection Agency's (EPA) letter should still be taken into account, as it directly reflects his state of mind at the time.") with 2d Mot. at 2 ("Even if the government were to argue that these activities do not meet the criteria of the Minor Repair Act, Mr. Lynch's reliance on the law as written should still be taken into account, as it directly reflects his state of mind at the time."); compare 1st Mot. at 4 (characterizing the February 21, 2021 letter he received from the EPA as constituting "guidance on compliance with EPA regulations" to "contractors, including Mr. Lynch") with 2d Mot. at 1-2 (characterizing the same letter as "official guidance" on the "interpretation of EPA's regulations" "addressed to lead abatement workers and firms")[1].

The defendant's only effort to deviate from his prior arguments comes as a superficial reaction to the Court's determination that, since he received the February 21, 2021 letter from the EPA six weeks after the work in question, "reliance is not an issue." (In Limine Order). Seeking to sidestep that ruling, the defendant now claims that he did not rely on the EPA's letter; he instead relied on the RRP itself, which was "established prior to the alleged offense." But that is a red herring—the government's motion in limine sought to preclude the defendant from making that very argument at trial because the RRP does not, as a matter of law, apply to abatements. It was the defendant who put forth the February 21, 2021 letter as the key document he relied upon, evidently not realizing it post-dated the supposed reliance. See 1st Mot. at 2-4. His efforts to nakedly recast that argument to circumvent the Court's ruling are obvious. Compare 1st Mot. at 4 ("The evidence of Mr. Lynch's reliance on the EPA's letter is not only relevant, but crucial.") with 2d Mot. at 2 ("The evidence of Mr.

---

[1] The defendant's continued mischaracterization of the lone piece of evidence he proffered borders on disingenuous. As the defendant well knows, the February 21, 2021 letter he received from the EPA was not a "clarifying letter" that offered an "interpretation of EPA's regulations" for the purpose of "industry guidance." Rather, it was a notice to the defendant individually—it was decidedly not "addressed to lead abatement workers and firms"—that the EPA was investigating his conduct and demanded broad categories of information to evaluate his legal compliance.

Lynch's reliance on the law as written, subsequently clarified by the EPA's letter, is not only relevant but also crucial.").

Perhaps most astonishing—and most indicative of the need for the Court to adhere to its prior ruling—is the defendant's steadfast refusal to acknowledge that there is no cognizable exception to the lead-based paint abatement regulations for projects of a certain size.  See 2d Mot. at 2 ("The activities attributed to Mr. Lynch in the present case fall within the purview of the Minor Repair Act, as each job involved the disturbance of only 6 square feet or less.").  Indeed, despite previously acknowledging the lack of any authority supporting this position, and despite this Court's prior rulings to the contrary, the defendant has nevertheless persisted in his baseless refrain.  E.g., 1st Mot. at 3  ("Mr. Lynch's activities, as alleged in the present case, are encompassed within the Minor Repair Act's purview, given that each job disrupted a mere 6 square feet or less."); June 22, 2023 Tr. at 15 (arguing that "[i]t's very unfair that this case was brought . . . for just two small abatement jobs . . . under six feet each, a very small area."); Oct. 13, 2022 Tr. at 5 (noting defendant's "belie[f]" that abatement projects "under a certain square footage" "could go both ways reasonably under the law."); Mot. to Dismiss (ECF:23) at 7 (arguing that the abatement regulation requiring an EPA-certified supervisor was inapplicable "because his work involved less than six square feet of renovation involving lead-based paint.").

The defendant's inability or unwillingness to grapple with the governing legal principle—which this Court has now twice affirmed—belies any serious effort to satisfy the exacting standard of review for reconsideration.  Rather, as the government noted in its reply papers (ECF:46), the defendant's myopic focus on the square footage of his work foretells a broader strategy of distorting the law before the jury.  Id. at 4 n.1 (pointing out defense counsel's misstatement of the RRP as an "alternative statute" that applies "when the abatement is" below a certain threshold in square footage).  The instant motion reinforces this point through its claim that the supposed square footage rule derives from something described as the "Minor Repair Act"—a statute that neither pertains to this case nor, in fact, seems to exist.  It is difficult to conceive of a more serious risk to juror confusion than to permit the defendant to forge ahead with a legal theory he has apparently invented from whole cloth.

      Based on the foregoing, it can hardly be said that the present circumstances warrant the "extraordinary remedy" the defendant seeks. The motion should be denied in its entirety.

                                                    Respectfully submitted,

                                                    BREON PEACE
                                                    United States Attorney

                           By:        /s/
                                                    Anthony Bagnuola, (631) 715-7849
                                                   James R. Simmons, (718) 254-7511
                                                   Assistant U.S. Attorneys

                                                   Jason P. Garelick
                                                   Special Assistant U.S. Attorney

cc:    Clerk of Court (GRB) (via ECF and e-mail)
        Counsel of Record (via ECF and e-mail)