UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

UNITED STATES OF AMERICA,

-against-

RICKEY LYNCH,

      Defendant.
----------------------------------------------------------X

FILED
CLERK
4:28 pm, Oct 12, 2023
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

MEMORANDUM OF
DECISION AND ORDER

Criminal Action No.
21-CR-405 (GRB)

**GARY R. BROWN, United States District Judge:**

  In this prosecution charging various offenses in connection with environmental remediation work, defendant Rickey Lynch moves for recusal of the undersigned from this prosecution or, in the alternative, withdrawal of his guilty plea. The application, styled as a "Second Motion for Recusal" was filed by defendant's new counsel, Samantha Chorny, Esq., of the "SMC Law Firm," and follows the involuntary withdrawal of a similar motion by counsel before she properly appeared in the case, which was addressed in an order dated September 20, 2023. Docket Entry ("DE") 68; *United States v. Lynch*, No. 21-CR-405 (GRB), 2023 WL 6141279, at *1 (E.D.N.Y. Sept. 20, 2023). For the reasons that follow, the "Second Motion for Recusal" is denied in all respects. Furthermore, this motion raises questions concerning Ms. Chorny's conduct in this case, which are respectfully referred to the Court's Committee on Grievances for further consideration.

  *Defendant's Second Motion for Recusal, or Alternatively, Withdrawal of Guilty Plea*

  The repackaging of the defendant's motion is principally superficial, though three alterations are worth noting. First, in the initial motion, defendant sought both recusal of the

1

undersigned and withdrawal of his guilty plea, but now seeks these as alternative remedies. DE 68 at 4.  Second, defendant initially sought relief predicated upon the erroneous assertion that the undersigned was "raised in Suffolk County" and that "potential loyalties to the County and its officials may hinder his ability to deliver an unbiased verdict."  DE 64 at 5.  Having been advised that the assertion was baseless and irrelevant, DE 65 at 1 n.1 ("That the posited connections are largely, if not entirely, erroneous need not even be reached, as the charged conduct occurred in . . . Nassau County, rendering the issue meaningless"), the defendant has transmuted that claim into allegations concerning ties to the EPA.  DE 68 at 11.  Third, while defendant first relied on a purportedly suspicious *recusal* of the undersigned in the class action litigation, having been corrected on the facts, defendant now argues lack of impartiality based on suspicious timing of the *reassignment* of the class action matter, purportedly in "synchrony" with the commencement of the Government's criminal investigation in this case.  *Id.* at 12.

Though plagued with conclusory, tangled arguments, the reformulated motion principally seeks recusal based on the following:

**1. Alleged Failure to Disclose Involvement in Prior Lawsuit**.  The undersigned served as a Magistrate Judge on several civil actions to which defendant was a party, most notably a class action concerning prison conditions in Suffolk County.  *See Butler v. Suffolk Cnty.*, No. CV 11-2602 (JS)(GRB), 2016 WL 11480705 (E.D.N.Y. June 15, 2016) (recommending approval of class action), *adopted sub nom. by Lynch v. Suffolk Cnty.*, No. 11-CV-2602 (JS)(GRB), 2016 WL 4508343 (E.D.N.Y. Aug. 29, 2016). According to counsel, this work provided the Court with "intimate knowledge of Mr. Lynch's medical, financial, criminal, and personal history."  DE 68 at 5.  While that assertion is largely (if not entirely) untrue, any such information that might have been encountered pales compared to the broad range of

personal information provided about defendants in the context of pretrial release and sentencing.[1]  Moreover, defense counsel conclusorily asserts that "underpinnings of the class action lawsuit are intertwined with the evidentiary facts of the current criminal proceeding," while failing to articulate these "significant overlaps," *id.* at 9, likely because there are not any.  While counsel thoughtlessly argues that "the nexus between the two cases doesn't merely stop at thematic resemblance but delves into factual commonalities," *id.*, one would be hard pressed to discern any common facts or issues arising from a class action lawsuit concerning sanitary conditions in a county jail and this prosecution relating to residential lead paint abatement projects performed by the defendant.  So, the substantive relevance is non-existent.

Counsel vehemently and repeatedly charges that "no disclosure was ever made by Judge Brown regarding his prior engagements and existing biases, contrary to the requisite stipulated in Title 28 U.S.C. § 455(e), thus undermining the integrity of the judicial process and compromising the defendant's right to a fair trial."  DE at 8; *cf. id.* at 14 ("The undisclosed biases could significantly impact the impartiality of the judicial process").  Counsel charges that the Court failed in a duty to disclose a publicly-known fact to defendant and affirmatively represents that "Mr. Lynch was unaware of Judge Brown's prior involvement in the Rickey Lynch class act lawsuit and his extensive ties to EPA-related cases until after he entered his guilty plea." *Id.* at 15 (arguing that "[h]ad Mr. Lynch been made aware of Judge Brown's

---

[1] Citing defendant's motion, the Government aptly notes:

> Lynch does not explain what information the Court supposedly gleaned from the civil lawsuit other than the damages claimed. (*Id.* at 6). Nor does he plausibly explain why that information would render the Court biased against him or how it could have "undermin[ed] the integrity of the judicial process" or "compromis[ed] [his] right to a fair trial." (*Id.* at 5.) Nor does he explain how any such "personal, financial, medical, and criminal history" information differs from that which the Court would have received in the ordinary course in the form of a Presentence Investigation Reports.

DE 71 at 10.

potential biases and the depth of his connections to . . . the class action lawsuit, it is likely that he may have pursued a different course of action, or sought a different judicial setting for his plea.")  At the substitution of counsel hearing, after conferring with her client, Ms. Chorny represented as follows:

> MS. CHORNY: Your Honor, I have to believe my client's representations which I am going to share with the court.
>
> The first time he was aware and made the connection that you were the same judge was on July 19, 2023, when the civil attorneys discussed that, hey, this judge did proceed over your case at some point over some proceedings that you were there for. Did you know that?
>
> And that's when it really did click in my client's head that that's, in fact, true.

DE 71-6 ("Tr") 8-9.

Of course, there are factors that tend to inferentially undermine this assertion.  For example, as counsel readily acknowledges, the undersigned presided as the Magistrate Judge in Mr. Lynch's case for more than a decade, as plainly reflected in public records.  In December 2011, the Clerk of the Court sent a letter directly to Mr. Lynch in one *pro se* action stating that the "case has been docketed . . . and assigned to the Honorable Joanna Seybert and Magistrate Judge Gary R. Brown," *Lynch v. Sposato*, 11-CV-6267 (E.D.N.Y. filed Dec. 22, 2011) (DE 5), though that case was later reassigned.  Decisions rendered in the class action matter that presumably made their way to defendant similarly give rise to an inference that he was or should have been aware of the assignment.  *See, e.g.*, *Butler v. Suffolk Cnty.*, 2016 WL 11480705 (the undersigned's determination approving class action).

The matter need not be left to inference, however, as the record contains direct proof. On January 7, 2012—nearly a decade before the commencement of this criminal prosecution— Mr. Lynch wrote a handwritten letter to the Clerk of the Court (which he copied to the

4

undersigned), inquiring about several matters, noting, in his own hand, that a referral of his claims:

> Was assigned to Magistrate Judge Gary R. Brown who denied my request to "merge" my claims of false arrest, false imprisonment, malicious prosecution and abuse of process into my amended Complaint, unless, I submit an "attached proposed amended Complaint" respectfully. The denial was with leave to renew directly to Judge Gary R. Brown. (See docket # 35).

*See Lynch v. Rice*, 10-CV-1252 (E.D.N.Y. filed Mar. 16, 2010) (DE 42). Then, on January 14, 2012, Mr. Lynch wrote the undersigned a two-page handwritten letter from the Nassau County Correctional Center. *See id.* (DE 44). Under the salutation "Dear Judge Brown," Lynch indicates that the "letter is by way of a Status," providing his "recent update" on several cases, including "*Lynch v. Demarco, et. al.*, CV 11-2602," the subject class action suit. He then requested as follows:

> For the reasons, set forth below, plaintiff/Petitioner, respectfully request that this Court can notify me on any decisions pertaining to the index numbers herein mentioned, and if I have to response to "any" motions by the opposing Defendants Counsel's, in regards to these index number respectfully.

5

*See id.* (DE 44 at 2). Defendant participated in several civil conferences—representing himself—over which the undersigned presided. *Id.* (DE 58; DE 59; DE 76). Given that he repeatedly corresponded about and appeared before the undersigned in civil litigation, including the subject class action matter, it seems that Mr. Lynch's insistence that he was never aware of this Court's involvement in his civil proceedings is simply false.

### 2. "Suspicious" Timing of Reassignment of Class Action litigation

Defendant resurrects his argument that the timing of the reassignment of the class action case, which emanated from the appointment of the undersigned as a United States District Judge, "raises substantial concerns regarding the impartiality and the knowledge base of Judge Brown concerning disputed evidentiary facts pertaining to the current proceeding." DE 68 at 12. As the government correctly notes, the reassignment reoccurred as part of a "mass reassignment" of 156 cases to new magistrate judges upon the elevation of the undersigned to the role of district judge. DE 71 at 2. Defendant's counsel has repeatedly alleged (though not demonstrated)[2] that there was an "exact concurrence" between this reassignment and "the initiation of the EPA's investigation," DE 68 at 12, and has utterly failed to explain the manner in which this might be relevant. Thus, the reassignment is neither suspicious nor a basis to support recusal.

---

[2] In its response, DE 71 at 9, the Government notes the following:

> Despite his accusations of impropriety, Lynch does not explain how the Court might have gained knowledge of the supposed commencement of an EPA investigation into lead-based paint abatement approximately eight months before any charges were unsealed. Nor, for that matter, does Lynch specify the factual basis for his assertion that the EPA's investigation was commenced on January 21, 2021. *See, e.g.*, 2d Mot. 2 (asserting that Lynch's lawsuit was reassigned "on the very day the EPA initiated a federal criminal investigation into the Defendant's case"). Previously, in his August 22, 2022 motion to dismiss, Lynch specifically disputed that the EPA's investigation began in January 2021 and wrote that "[i]n and around February of 2020 . . . the EPA turned tables and started investigating Mr. Lynch." (ECF:23.)

### 3. Relationship to Hurricane Sandy Litigation

Defendant argues:

> Judge Brown's historic order, compelling flood insurance companies to release engineering reports amidst allegations of falsified reports to evade compensating homeowners, showcased his staunch stance against fraudulent reporting to federal agencies. The parallel between this and Mr. Lynch's plea concerning fraudulent reporting to the EPA is glaring and heightens the likelihood of bias, consciously or subconsciously.

DE 68 at 11.  There are no glaring parallels.  The EPA had no role in the Superstorm Sandy litigation, and there is simply no connection between that matter and this one.[3]

### 4. Ties to the EPA

According to the defendant:

> Judge Brown's tenure as an Assistant United States Attorney in the Eastern District, with extensive engagements on Environmental Protection Agency (EPA) related cases, further evinces a level of bias that has a direct bearing on the impartial adjudication of this case, particularly when the core of Mr. Lynch's plea involves accusations of fraudulent reporting to the EPA. [ ]
>
> Moreover, Judge Brown, during his tenure as an Assistant United States Attorney in the Eastern District, developed extensive ties to the EPA by prosecuting numerous cases concerning EPA matters.

DE 68 at 4-5.  While serving as an AUSA—a tenure that ended nearly two decades ago—the undersigned undoubtedly handled and/or supervised a few environmental matters, including several 20th century cases involving agencies other than the EPA.[4]  Thus, assertions of "extensive engagements" with, DE 68 at 14, and "extensive ties" to, the agency, DE 68 at 12, 15, are factually incorrect.

---

[3] Though ludicrous, this variation represents an improvement over defendant's original formulation of this argument, which suggested that "Judge Brown's crucial order concerning Superstorm Sandy claims underscored his deep aversion to false reporting." DE 64 at 5.  Given that federal judges have a sworn duty to uphold the law, see 28 U.S.C. § 453, a distaste for criminal conduct would seem to go with the territory.

[4] See, e.g., *United States v. One Handbag of Crocodilus Species*, 856 F. Supp. 128 (E.D.N.Y. 1994) (environmental forfeiture action involving the U.S. Fish and Wildlife Service).

7

**Discussion**

*A. Motion to Recuse*

As counsel for defendant is aware (as the motion for recusal expressly cites the relevant opinion), this Court has previously held:

28 U.S.C. § 455(b)(1) . . . provides, in relevant part, as follows:

> Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which ... he has ... personal knowledge of disputed evidentiary facts concerning the proceeding.

A separate provision of the statute [ ] requires that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."28 U.S.C. § 455(a). [ ] Federal judges are also subject to the provisions of the Code of Conduct for Federal Judges, which, in relevant part, mirrors the language of these statutory provisions. *See* Canon 3D.

As to a subsection (a) disqualification, the Second Circuit has held:

> Disqualification under section 455(a) requires a showing that would cause "an objective, disinterested observer fully informed of the underlying facts [to] entertain significant doubt that justice would be done absent recusal." *In re Aguinda,* 241 F.3d 194, 201 (2d Cir. 2001) (citation and internal quotation marks omitted) (alteration in original); *see Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 858–62, 108 S. Ct. 2194, 100 L. Ed. 2d 855 (1988); *United States v. Bayless*, 201 F.3d 116, 127–28 (2d Cir. 2000).

*United States v. Lauersen*, 348 F.3d 329, 334 (2d Cir. 2003), *as amended* (Nov. 25, 2003), *adhered to on reh'g*, 362 F.3d 160 (2d Cir. 2004), *vacated on other grounds,* 543 U.S. 1097, 125 S. Ct. 1109, 160 L.Ed.2d 988 (2005). "[T]his test deals exclusively with appearances. Its purpose is the protection of the public's confidence in the impartiality of the judiciary." *In re Basciano,* 542 F.3d 950, 956 (2d Cir. 2008). "Where a case, by contrast, involves remote, contingent, indirect or speculative interests, disqualification is not required." *In re Aguinda*, 241 F.3d 194, 201 (2d Cir. 2001).

There is a "presumption" that judges will conduct proceedings properly and impartially, which "should remain in effect until it is overcome by adequate proof." *Wolfson v. Palmieri*, 396 F.2d 121, 126 (2d Cir. 1968). As a result, the Second Circuit has affirmed denials of motions for recusal in more than one "remarkable case." *See, e.g., Basciano*, 542 F.3d at 956 (holding that recusal not "routinely required" even in the face of "evidence that the defendant has plotted or threatened

8

to kill" judge); *United States v. Bayless*, 201 F.3d 116, 119 (2d Cir. 2000) (finding that it was not plain error to refuse recusal motion where district judge's determinations led to calls for his impeachment and resignation).

These prescriptions give rise to a tension within the law of recusal. This is best summarized in the axiomatic phrase, "[a] judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is." *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1312 (2d Cir. 1988). Furthermore, where, as here, a judicial officer had invested significant time on a matter, considerations of judicial economy heighten the duty to deny inappropriate recusal motions. *United States v. El-Gabrowny*, 844 F. Supp. 955, 959 (S.D.N.Y. 1994) ("I have dealt with numerous applications and motions relating to various defendants in this case, including ... matters relating to discovery, attorney disqualification, restraints on attorney speech, and bail, among others. It could easily be held that granting the motion at this point would represent a waste of judicial resources").
[ ]. The Second Circuit has explained the basis for this approach:

> Discretion is confided in the district judge in the first instance to determine whether to disqualify himself. The reasons for this are plain. The judge presiding over a case is in the best position to appreciate the implications of those matters alleged in a recusal motion. In deciding whether to recuse himself, the trial judge must carefully weigh the policy of promoting public confidence in the judiciary against the possibility that those questioning his impartiality might be seeking to avoid the adverse consequences of his presiding over their case. Litigants are entitled to an unbiased judge; not to a judge of their choosing.

*Drexel*, 861 F.2d at 1312.

*Flores v. Town of Islip*, 448 F. Supp. 3d 267, 272–74 (E.D.N.Y. 2020).

Against this backdrop, the bases offered in support of defendant's recusal motion are easily dispatched. As noted above, the assertions proffered on this motion are largely untrue, and completely irrelevant. Nothing offered provides the slightest appearance of partiality. Given that the undersigned has handled this matter from its inception, through motion, jury selection and the commencement of trial, granting this motion would constitute not only a waste of resources but would amount to a dereliction of this Court's responsibility "not to recuse . . . when it is not called for." *See Drexel*, 861 F.2d at 1312.

Thus, the motion for recusal is denied.

9

### B. *Motion for Withdrawal of the Plea*

Defendant seeks, as an alternative to recusal, withdrawal of his plea, yet offers no additional bases for such withdrawal. Under Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure, a defendant may withdraw his guilty plea if he shows "a fair and just reason" for doing so. As this Court has recently observed:

> While "a defendant has no absolute right to withdraw his plea of guilty," *United States v. Avellino,* 136 F.3d 249, 261 (2d Cir. 1998); *United States v. Terry*, No. 18-CR-560 (GRB), 2022 WL 2954085, at *4 (E.D.N.Y. July 26, 2022), the Court "may" permit withdrawal of a plea upon the demonstration of "a fair and just reason" under Fed. R. Crim. P. 11(d)(2)(B). The determination ultimately falls within the Court's discretion, though such discretion must be exercised in the context of the gravity of such determinations.
>
> "Society has a strong interest in the finality of guilty pleas, and allowing withdrawal of pleas not only undermines confidence in the integrity of our judicial procedures, but also increases the volume of judicial work, and delays and impairs the orderly administration of justice." *United States v. Maher*, 108 F.3d 1513, 1529 (2d Cir. 1997) (alterations omitted). In considering a request to withdraw a guilty plea, a "district court should examine the amount of time elapsed between the plea and the subsequent motion to withdraw, and whether the defendant's motion to withdraw his plea asserted his innocence, as well as giving due regard to any prejudice the government might suffer as a result." *United States v. Karro*, 257 F.3d 112, 117 (2d Cir. 2001) (citations omitted).

*United States v. Houpe*, No. 21-CR-179 (GRB), 2023 WL 2868462, at *4 (E.D.N.Y. Apr. 7, 2023). "[A] change of heart prompted by his reevaluation of either the Government's case against him or the penalty that might be imposed is not a sufficient reason to permit withdrawal of a plea." *United States v. Schmidt*, 373 F.3d 100, 102 (2d Cir. 2004) (citation omitted).

Here, the defendant offers no legitimate basis upon which the withdrawal of his guilty plea might be predicated. The defendant makes no pretense of asserting innocence and offers nothing to controvert the Court's finding of voluntariness. More than two months elapsed before the defendant attempted to withdraw his plea. The Government (and the public) would bear significant prejudice and costs should defendant be permitted to withdraw his plea, which

10

was entered after jury selection and the commencement of trial. Under these circumstances, defendant has failed to make the showing required to justify withdrawal of his guilty plea.

      *C. Referral to the Court's Grievance Committee*

Defendant's counsel has engaged in conduct in this matter that can be fairly characterized as troubling. This conduct includes the following:

- Repeatedly ignoring the proper procedures for substitution of counsel in a criminal case, as required by the Local Rules of this Court.[5] *See* DE 63; DE 65; DE 67; Electronic Order dated 9/21/23.

- Filing the initial motion for recusal and withdrawal of plea, which contained false, erroneous and improperly investigated assertions of fact and law. DE 65 at 1 n.1. The problematic assertions include, but are not limited to the following:

    o that the undersigned had ties to Suffolk County, and that somehow impacted this case which occurred in Nassau County. Tr. 6, 13-15.

    o that the undersigned had been recused from defendant's *pro se* matters, an assertion that Ms. Chorny later acknowledged was "erroneous" as reflected by records in her possession. Tr. 11.

    o that Mr. Lynch was unaware that the undersigned had served as the magistrate judge on his class action matter for a decade, and that matter had bearing on the instant case. Tr. 8-9.

- Notwithstanding issues raised at the hearing and the admonishments contained in the Court's order, filing the second motion for withdrawal and recusal, which contained false assertions of fact, as specified herein, including reasserting many of the matters asserted in the first motion for recusal.

The concerns raised by counsel's actions are heightened by Ms. Chorny's relatively recent admission to the bar of this District and formation of her own law firm (all reportedly within the last year) and her repeated improper filings and false assertions despite clear warnings by the

---

[5] As part of her admission to this Court, which was finalized in October 2022, Ms. Chorny (like all applicants) certified that she "read and am familiar with . . . the Local Rules of this Court." *See* Petition for Attorney Admission dated 8/3/22.

11

Court and far more experienced co-counsel.[6] Clearly, these matters should be addressed. However, rather than commingle any determinations regarding Ms. Chorny with the resolution of the criminal charges against defendant, these matters are respectfully referred to the district's Committee on Grievances.

Under Local Rule 1.5, "[d]iscipline or other relief . . . may be imposed, by the Committee on Grievances . . . if . . . [i]n connection with activities in this Court, any attorney is found to have engaged in conduct violative of the New York State Rules of Professional Conduct." Local Rule 1.5(b)(5). Ms. Chorny's conduct may have violated several of those rules, including the following:

Rule 1.1: Competence.

> (a) A lawyer should provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

> (b) A lawyer shall not handle a legal matter that the lawyer knows or should know that the lawyer is not competent to handle, without associating with a lawyer who is competent to handle it.

Rule 3.1: Non-meritorious Claims and Contentions.

> (a) A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous.

---

[6] Mr. Greenberg, a highly-experienced attorney who served admirably as defendant's lead trial counsel, noted in a September 24, 2023 letter to the Court:

> I cannot address the subject of Mr. Lynch's "conflict of interest" claim because that matter was never communicated to me or anyone in the office. It is probably for the best that Lynch goes down that rabbit hole with a new lawyer at his side.

DE 67 at 2. Since the 1865 release of Lewis Carroll's *Alice's Adventures in Wonderland*, the phrase "rabbit hole" has become "a popular and useful reference . . . used to characterize bizarre and irrational experiences . . . especially used to describe . . . challenging, and even dangerous places or positions, similar to Carroll's topsy-turvy Wonderland." Rabbit Hole, Slang Dictionary, https://www.dictionary.com/e/slang/rabbit-hole/ (last visited Oct. 12, 2023). At the hearing, Ms. Chorny acknowledged reading Mr. Greenberg's letter and the clear warning it contained, but professed ignorance of the meaning of the phrase "rabbit hole" and a concomitant lack of understanding of Mr. Greenberg's precatory caution. Tr. 14. Perhaps she should have made the effort to find out.

  (b) A lawyer's conduct is "frivolous" for purposes of this Rule if:

    (1) the lawyer knowingly advances a claim or defense that is unwarranted under existing law, except that the lawyer may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law;

    (3) the lawyer knowingly asserts material factual statements that are false.

Rule 3.3: Conduct Before a Tribunal.

  (a)  A lawyer shall not knowingly:

    (1) make a false statement of fact or law to a tribunal;

    (3) offer or use evidence that the lawyer knows to be false.

Thus, questions surrounding Ms. Chorny's conduct are respectfully referred to the Committee on Grievances for further review.

**Conclusion**

Based on the foregoing, the motion for recusal or, in the alternative, withdrawal of defendant's guilty plea is DENIED.  Issues raised by Ms. Chorny's conduct in this matter are REFERRED to the Committee on Grievances.

Dated: Central Islip, New York
   October 12, 2023

               /s/ Gary R. Brown

               GARY R. BROWN
               United States District Judge